**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TIMOTHY E. McCRARY, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JACK GREGSTON  and PAUL M. )<br>DeWEESE, )<br>)<br>Defendants. ) | Case No. CIV-06-201-M |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages for alleged violation of his constitutional rights.  At all times pertinent to this action, Plaintiff has been in the custody of the Oklahoma Department of Corrections (DOC) incarcerated at the Lawton Correctional Facility (LCF).

This matter has been referred by Judge Miles-LaGrange for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  Officials at LCF have filed a Special Report [Doc. #13] as directed by the Court, and Defendants have filed a Motion to Dismiss or for Summary Judgment and Brief in Support (Defendants' Motion) [Doc. #14]. Plaintiff has responded [Doc. #20] (Plaintiff's Response).   For the reasons set forth below, it is recommended that Defendants' Motion to Dismiss be granted.

**I.     Background**

When Plaintiff entered LCF on January 16, 2004, he had previously been diagnosed with occlusive disease in the left ilio-femoral artery. *See* Special Report Exs. 7, 8. A physician at the University of Oklahoma Medical Center had performed a cardiac catheterization procedure on December 15, 2003, with placement of a stent which successfully restored blood flow to Plaintiff's left leg. Special Report Ex. 10. The success was temporary, however, and on August 6, 2004, surgeons performed an operation using a reinforced graft to restore blood flow to Plaintiff's left leg. Special Report Ex. 11.

In February 2005, tests performed at the OU Medical Center revealed that Plaintiff's graft was completely occluded. Special Report Ex. 13. On October 20, 2005, physicians unsuccessfully attempted to restore blood flow in Plaintiff's leg by performing another cardiac catheterization. Special Report Ex. 21. The procedure was repeated on October 21, 2005, with successful results. Special Report Ex. 20.

**II.    Plaintiff's Claims**

Plaintiff's claims asserted in the Complaint are limited to the medical care he received at LCF between approximately May and August 2005, before his most recent cardiac catheterization. In stating the general background of the case, Plaintiff alleges that the medical staff at LCF refused to give him any medication to control the extreme pain he was experiencing in his left leg. Complaint at 2. In Count I, Plaintiff claims that Defendant Gregston, identified as the LCF physician, "knowingly, recklessly [and] flagrantly" subjected Plaintiff to "unnecessary pain and suffering by refusing to treat him for his pain." Complaint

2

at 3A-3B. Plaintiff alleges that he was seen by Defendant Gregston on May 17, 2005, but that Defendant Gregston did not authorize Vicodin until three months later. Complaint at 3B. In Count II, Plaintiff claims that Defendant DeWeese, identified as the Health Services Administrator at LCF, "took no corrective action" to ensure that Plaintiff was prescribed pain medication. Complaint at 3A-3B. Plaintiff alleges that Defendant DeWeese "acquiesced in the malfeasant conduct of Dr. Gregston" and that Plaintiff "continue[d] to suffer for over three months before finally being issued vicodin for his pain (8/11/05)," and thereafter his pain medication was prescribed one week at a time. *Id.* In Count III, Plaintiff claims that the actions of Defendants Gregston and DeWeese deprived him of his rights under state law, in that "[f]or over a full three month period [Plaintiff] continued to complain about pain medication and was continuously denied." Complaint at 4.

## III.  Analysis

### A.  Federal Law Claims

Defendants move for dismissal of Plaintiff's action on the ground that Plaintiff has failed to satisfy the exhaustion requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), with respect to the allegation that Defendants failed to prescribe pain medication for a three-month period beginning in May 2005 and ending in August 2005.[1]

---

[1] In the alternative, Defendants contend that this action should be dismissed because allegations of delay or disagreement with medical care do not rise to the level of a constitutional violation, because allegations of negligence are not cognizable in a civil rights action, and because, as to Defendant DeWeese who is not a physician and could not prescribe pain medications, Plaintiff has failed to state a claim upon which relief can be granted.

The PLRA mandates exhaustion of administrative remedies in actions, such as this one, challenging prison conditions. Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Actions filed before the exhaustion requirement is satisfied must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-741 (2001); *see also Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1207 (10th Cir. 2003) ("[T]he substantive meaning of § 1997e(a) is clear: resort to a prison grievance process must precede resort to a court.").

Tenth Circuit precedent requires a prisoner to sufficiently plead exhaustion of administrative remedies in the complaint or face dismissal of his section 1983 action. *Steele*, 355 F.3d at 1209. Section 1997e(a) requires a prisoner not only to initiate the grievance process, but to follow the process to its end. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies.").

The DOC has set forth its Inmate/Offender Grievance Process in Policy #OP-090124. There are three stages to the grievance process: informal resolution, formal grievance, and appeal to the Administrative Review Authority or Chief Medical Officer of the DOC.[2]

---

[2] "Administrative Review Authority" is defined as "t[he] director, chief medical officer [of the DOC] or their designee to whom the formal grievance is submitted for final appeal." OP-090124 § I(E).

The policy requires an inmate to attempt informal resolution before filing a formal grievance. First, an inmate must attempt to resolve the complaint informally by talking with the case manager, supervising employee or other appropriate staff within three days of the incident. OP-090124 § IV(A). If the first attempt to resolve the issue is unsuccessful, the inmate must then submit a Request to Staff to an appropriate staff member stating the problem completely but briefly. Requests to Staff must be submitted within seven calendar days of the incident forming the basis of the request. OP-090124 § IV(B)(1)-(2).

If the inmate's complaint is not resolved informally, the inmate may file a formal grievance by submitting to the facility's reviewing authority a completed "Inmate/Offender Grievance Report Form" along with the original "Request to Staff" form used in the informal process.[3] OP-090124 § V(A). A Grievance Report generally must be submitted within fifteen calendar days of the incident or the date of the response to the Request to Staff, whichever is later, but the policy includes exceptions to this time limit not relevant to this case. *See* OP-090124 § V(A)(1)-(3).

Plaintiff alleges in his Complaint that he exhausted his administrative remedies before filing his Complaint. *See* Complaint at 5. Plaintiff has attached the following documents as exhibits to his Complaint as evidence of exhaustion of his administrative remedies:[4]

| | |
|---|---|
| March 14, 2005 | Request to Staff directed to Defendant DeWeese. Plaintiff requested pain medication and information concerning future |

---

[3]"All medical grievances will be submitted to the facility's correctional health services administrator for resolution." OP-090124 § V(A)(5).

[4]For clarity, the exhibits are described here in chronological order.

|  |  |
|---|---|
|  | plans for treatment. Defendant DeWeese responded that Plaintiff should submit a medical request because only a doctor could prescribe pain medication and explain the import of diagnostic studies. (Exhibit B) |
| May 2, 2005 | Medical Request. Plaintiff complained of left leg and foot pain and requested information concerning plans for his treatment. The medical unit scheduled an appointment for Plaintiff on May 12, 2005. (Exhibit C) |
| May 13, 2005 | Medical Request. Plaintiff stated that he wanted to see a medical doctor rather than a nurse or physician's assistant. An appointment was scheduled for May 31, 2005. (Exhibit D) |
| July 4, 2005 | Request to Staff directed to Defendant DeWeese. Plaintiff requested that he be "placed in medical until surgery has been performed to restore circulation to [his] leg." Defendant DeWeese responded by advising Plaintiff that he needed to submit a medical request to be seen by a doctor to evaluate his needs. (Exhibit A) |
| July 7, 2005 | Request to Staff directed to Defendant DeWeese. Plaintiff stated that he wanted to know exactly when he was scheduled for surgery. Defendant DeWeese responded that outside care and treatment through the OU Medical Center was scheduled by medical center personnel. Defendant DeWeese further stated that he was not allowed to tell Plaintiff the date and time of future appointments. (Exhibit E) |
| September 12, 2005 | Request to Staff directed to Defendant DeWeese. Plaintiff stated that on September 11, 2005, he was told it was the last day he would receive Vicodin. He questioned why he had to continue without pain medication. Defendant DeWeese responded on September 13, 2005, and advised Plaintiff to submit a medical request. Defendant DeWeese also advised Plaintiff that his case was being reviewed by an OU specialty clinic. (Exhibit F3) |
| September 19, 2005 | Inmate/Offender Grievance Report. Plaintiff stated that he was in pain because of the lack of circulation in his leg. He stated that he had received pain medication on August 12, 2005, but |

|  |  |
|---|---|
|  | that the prescription expired on August 21, 2005, and had to be renewed. Plaintiff stated that the prescription was renewed on September 2, 2005, only to expire again on September 11, 2005. He requested a transfer to a different facility. (Exhibit F1) |
| October 13, 2005 | Grievance Response from Reviewing Authority. This Response stated that on September 22, 2005, Dr. Carns prescribed Vicodin for 30 days for pain management and that Plaintiff had been informed that the prescription would expire in a few days. Plaintiff was "encouraged to drop a medical request" before the prescription expired. (Exhibit F2) |
| December 2, 2005 | Disposition of appeal to Medical Services Administrator of the DOC. The Medical Services Administrator noted that Plaintiff had received prescription medication that was last renewed on October 19, 2005, and that Plaintiff had been admitted to Presbyterian Hospital the next day for surgery to correct Plaintiff's circulation problems. Plaintiff's request for transfer was denied. (Exhibit F4) |

Although Plaintiff submitted several requests to staff and filed one grievance, none of these documents address the claims he presents in this action. The one grievance Plaintiff filed is limited to issues involving the expiration of prescriptions for pain medication beginning on August 12, 2005. It was in Plaintiff's grievance appeal that Plaintiff first discussed previous attempts to procure pain medication.[5] Because Plaintiff has failed to exhaust his administrative remedies, Plaintiff's claims brought under federal law should be dismissed without prejudice.[6]

---

[5] In his grievance appeal, Plaintiff states that he "was prescribed codeine for the pain" on May 31, 2005. *See* Complaint Ex. F2 at 2. This statement contradicts Plaintiff's assertion in his Complaint that the "medical staff refused to give the plaintiff anything for the pain he was experiencing." Complaint at 2.

[6] In Plaintiff's Response [Doc. #20] to Defendants' Motion to Dismiss, Plaintiff attaches additional documents including Requests to Staff and an Inmate Grievance Report and Grievance

(continued...)

7

### B.   Plaintiff's State Law Claim

In Count III of the Complaint, Plaintiff states that Defendants' "deliberate and wanton neglect subjected him to a blatant disregard for his rights guaranteed him under state law." Complaint at 4. The Tenth Circuit Court of Appeals has recently reiterated that "pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law claim." *McWilliams v. Jefferson County*, ___ F.3d ___, 2006 WL 2556350 at *3 (10th Cir. September 6, 2006) (citations omitted).

> "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Id.* at *4 (*quoting Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). If this Report and Recommendation is adopted, all federal law claims will be dismissed without prejudice before trial. This case has no unusual features that would counsel retention of the pendent state law claim. The Court, therefore, should decline to exercise jurisdiction over Plaintiff's state law claim and dismiss Plaintiff's action in its entirety.

---

[6](...continued)
Response all dated August and September 2004. These documents pertain to a change in Plaintiff's pain medication from a prescription medicine to Tylenol in August 2004. They were submitted well before the time period pertinent to the allegations asserted in Plaintiff's Complaint (May through August 2005) and therefore do not demonstrate that Plaintiff has exhausted his administrative remedies for the claims asserted in this action, as required by 42 U.S.C. § 1997e(a).

**RECOMMENDATION**

It is recommended that Defendants' Motion to Dismiss [Doc. #14] be granted pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff has failed to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a) for his claims based on federal law.  Further, it is recommended that this Court decline to exercise jurisdiction over Plaintiff's state law claim and dismiss Plaintiff's action in its entirety without prejudice.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by November __7th__, 2006.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __18th__ day of October, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE